IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. KEEAN F.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLANT,

V.

KEEAN F., APPELLEE.

Filed November 10, 2020.    No. A-20-420.

Appeal from the District Court for Hall County: ANDREW C. BUTLER, Judge. Affirmed.

Martin R. Klein, Hall County Attorney, Thomas Joseph Helget, and Christopher J. Harroun for appellant.

Gerard A. Piccolo, Hall County Public Defender, for appellee.

PIRTLE, BISHOP, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

The State of Nebraska appeals the order of the Hall County District Court granting Keean F.'s motion to transfer his criminal case to the Hall County Court, sitting in its capacity as a juvenile court. Because the evidence does not support a finding that the district court abused its discretion in granting the transfer of Keean's case to the county court, we affirm.

## II. BACKGROUND

### 1. INCIDENT

This case arises from a September 26, 2019, fight between Keean (who had been born exactly 14 years earlier on September 26, 2005) and another teen, A.U. The two teenage boys were apparently both interested in the same teen girl and, after Keean observed some pictures of the girl

- 1 -

in A.U.'s vehicle (which pictures had been posted on social media), the two teen boys agreed that they would engage in a fistfight. At least 11 people showed up for the fight and all but one of the individuals was a juvenile. As the fight began, Keean produced brass knuckles, but put them in his pocket after witnesses advised that the fight was not to include weapons. The fight resumed without weapons with A.U. apparently getting the upper hand. Eventually, A.U. knocked Keean to the ground, then backed away. As Keean got to his feet, he pulled a folding knife from his pocket. Keean displayed the blade, then aggressively lunged at A.U., stabbing A.U. in the chest. Keean left the scene and A.U. was transported to the hospital where he underwent open heart surgery to repair internal and external damage with the surgeon remarking that he was surprised A.U. survived the stabbing and operation.

Several months later, in November 2019, Keean was ultimately located and arrested in Lincoln, Nebraska. Keean was transported to the Northeast Nebraska Juvenile Detention Center in Madison, Nebraska (Madison Detention Center), and refused to speak to law enforcement. As a result of the incident, Keean was charged in the Hall County District Court with attempted first degree murder, first degree assault, and use of a deadly weapon (knife) to commit a felony, all Class II felonies. Thereafter, Keean filed a motion to transfer his case to the juvenile court.

2. HEARING ON MOTION TO TRANSFER

A hearing on the motion to transfer to the juvenile court was held in March 2020. Evidence was adduced through witness testimony and exhibits including the transcript of the preliminary hearing in Hall County Court, copies from Keean's juvenile court files, Keean's birth certificate, Keean's behavior report, school transcript, a report regarding Keean's gang membership, police reports, and the audio recording of the county court arraignment.

The evidence at the hearing on the motion to transfer established that between April and July 2018, 12-year-old Keean was involved in four separate incidents wherein he was alleged to have committed numerous offenses including terroristic threats, third degree assault, obstructing a peace officer, false reporting, carrying a concealed weapon, possession of marijuana, tobacco use by a minor, and possession of drug paraphernalia. These offenses were not charged until July 2019 in the Hall County Court sitting in its capacity as a juvenile court. The first of the charges was filed on July 12. That same day, the Office of Probation Administration conducted a juvenile intake screening risk assessment of Keean which involved a face-to-face interview. At the conclusion of the assessment, the recommended outcome was to place the then 13-year-old Keean at the Boys Town Central Nebraska shelter in Grand Island, Nebraska. This placement apparently occurred without delay because, in a journal entry dated 3 days later, on July 15, the Hall County Court, sitting in its capacity as a juvenile court noted that Keean had failed to appear at his first appearance hearing and had "scored for Shelter Detention related to this case over the weekend, then left Boystown and his whereabouts are unknown." The court issued "a pickup order due to [Keean's] failure to appear." Keean likewise failed to appear for his first appearance hearing held on August 22 in another of his juvenile cases and a pick-up order was issued in that case as well. It was during the period of time between Keean leaving the Boys Town shelter in July and being arrested in Lincoln, Nebraska, in November, that the fight, injuries to A.U., and resulting charges occurred.

During a November 19, 2019, court hearing regarding the four juvenile court cases, Keean acted and spoke in a manner that was disrespectful to his mother, his attorney, and the court.

Specifically, at the end of the hearing, Keean uttered "Fuck the system" and "keep your two heads up" which he directed toward the judge and county attorney.

Keean had not been adjudicated for any of these matters at the time the motion to transfer was filed and considered by the district court. During oral argument, the county attorney conceded the delay in filing these four matters was due to the press of other business and resulting delays in his office at that time.

The facts as previously set forth regarding the fight between Keean and A.U. and the aftermath were adduced as previously set forth. Grand Island Police Captain Jim Duering testified that Keean met 6 of 10 criteria of gang association within the last 3 years: using gang hand signs, associating with known gang members, being involved in gang-related photographs, wearing gang clothing, self-admission to gang affiliation, and using gang graffiti.

Ramona Mrkvicka testified that she is the director of the Ombudsman Northern Center which is an alternative education program for the Grand Island Public School system. She testified that from January through May 2019, Keean was a student at the Ombudsman program attending from 7:30 a.m. until 11:30 a.m. According to Mrkvicka, Keean does not have any "educational disabilities" and is a "pretty bright boy." After completing his eighth grade coursework in early April, Keean was promoted to ninth grade so that the center could give him classes that would count toward his high school diploma. During the time period for January until May 26, Keean missed a total of 32 days of classes. Additionally, Keean failed to complete his assignments from April 8 until the end of the school year in late May. During the January to May time period, Keean violated the code of student conduct 11 times. Mrkvicka stated that although Keean was supposed to return to school in August 2019, he has not been registered for classes.

Keean called Josh Albrecht, probation juvenile supervisor, on his behalf. Albrecht testified that, in approximately November 2019, his office completed a juvenile intake and placement assessment on Keean and placed him at the Madison Detention Center where Keean remains. At the Madison Detention Center, individuals have the opportunity for school, recreation, minimal other services, are supervised 24 hours per day, and cannot leave the facility. Albrecht testified that, during the time that Keean has been at the Madison Detention Center, Keean has received 10 credits each in pre-algebra, U.S. history, and physical science; 5 credits in English; and 2 credits in health. Albrecht testified that if Keean was placed on juvenile probation, available services would include home-based initiatives, home-based tools such as trackers, day reporting, and electronic monitoring; out-of-home placements including foster homes, group homes, and the Youth Rehabilitation and Treatment Center (YRTC) which is a 24-hour supervised facility that includes programming; and family support including clinical levels of care such as multisystemic therapy (MST), placement at the Boys Town shelter, and intensive family preservation. If a juvenile did not follow through with the juvenile court's requirements, an alleged probation violation would be filed and the juvenile would then be subject to a higher level of care or placement.

Albrecht testified that as of the date of the hearing, Keean had not been adjudicated in the juvenile court and had not received any preadjudication services through the juvenile court other than placement at the Madison Detention Center. Albrecht testified that Keean was 14 years old and the juvenile court's jurisdiction would last until Keean turned 19. Albrecht also explained that even if the juvenile court ordered Keean to be placed at YRTC, "[t]he Juvenile Court judge would

- 3 -

not have jurisdiction over the length of stay that [Keean] would remain at the YRTC. . . . I've never seen a four-year placement there." He explained that the Nebraska Department of Health and Human Services under the Office of Juvenile Services runs YRTC and even if Keean was transferred to the juvenile court, adjudicated by the juvenile court judge, and assigned to YRTC, there was no guarantee that Keean would remain at YRTC until he turned 19. Albrecht testified:

Upon the YRTC deeming that [Keean] is rehabilitated or has completed his program, notice is sent to the [juvenile court] judge for a re-entry hearing.

However, that's not really an approved or disapproved sort of scenario of [Keean] coming out [of YRTC]. It is a presentation of the plan that has been developed and an overall view of kind of the work that has been developed.

### 3. DISTRICT COURT ORDER GRANTING MOTION TO TRANSFER

The district court considered and weighed the following factors in Neb. Rev. Stat. § 43-276(1) (Supp. 2019) in deciding to grant Keean's motion to transfer his case to the juvenile court.

#### (a) Factors Considered by District Court in Determining Whether to Transfer Jurisdiction to Juvenile Court

##### (i) Type of Treatment

The district court found that even though Keean had multiple matters pending in the juvenile court, Keean had not had the opportunity to participate in any treatment or options available through the juvenile court system except placement at the Madison Detention Center. The court further noted that Keean had made progress while placed at the Madison Detention Center and, although the current offense was violent, "it is difficult not to give this 14-year-old child an opportunity to find the right path [and] maybe with guidance, structure and help, Mr. Keean can be rehabilitated. Therefore, the court found that this factor supports waiving jurisdiction to the juvenile court."

##### (ii) Whether Alleged Offense Included Violence

In considering the factor of whether the alleged offense included violence, the court noted that it was clear that the alleged offense included violence and this factor supported the district court retaining jurisdiction over the matter.

##### (iii) Motivation for Offense

The district court found that the motivation for the commission of the offense was neutral because "the motivation for this offense was reckless, irresponsible, immature and included significant violence, and frankly provides the Court with both reasons to retain jurisdiction and waive jurisdiction to the juvenile court. Therefore, the court found that this factor neither supports the Court retaining jurisdiction nor waiving jurisdiction to the juvenile court."

## (iv) Age of Keean and Others Involved

The court noted that the incident occurred on Keean's 14th birthday. Further, the victim was a minor and the bystanders were all minors except for one individual. The court further stated that "[t]he State of Nebraska was allowed to charge [Keean] as an adult in this matter by mere hours. This factor supports waiving jurisdiction to the juvenile court."

## (v) Keean's Previous History

The court noted that although Keean had multiple cases pending in the juvenile court, he had not been convicted or adjudicated of any previous offenses. Specifically, the district court's order listed the cases pending in juvenile court and status of those cases as follows:

In JV 19-223[, Keean] has been charged with Terroristic Threats and 3rd Degree Assault. The alleged offense date for both counts is April 16, 2018. [Keean] has been arraigned on the charges, advised of his rights and counsel has been appointed. [Keean] has denied the allegations. The Juvenile Court placed [Keean] at [the Madison Detention Center] and the matter is pending adjudication.

In JV 19-224[, Keean] has been charged with Obstructing a Peace Officer, False Reporting, and Carrying a Concealed Weapon. The alleged offense date for all three charges is May 18, 2018. [Keean] has been arraigned on the charges, advised of his rights, and counsel has been appointed. [Keean] has denied the allegations. The Juvenile Court placed [Keean] at [the Madison Detention Center] and the matter is pending adjudication.

In JV 19-226[, Keean] has been charged with Possession of Marijuana weighing more than 1 ounce but less than 1 pound and Tobacco Use by a Minor. The alleged offense date for both counts is July 13, 2019. [Keean] has been arraigned on the charges, advised of his rights, and counsel has been appointed. [Keean] has denied the allegations. The Juvenile Court placed [Keean] at [the Madison Detention Center] and the matter is pending adjudication.

In JV 19-252[, Keean] has been charged with Obstructing a Peace Officer, Possession of Marijuana less than 1 ounce and Possession of Drug Paraphernalia. The alleged offense date for all three counts is May 1, 2019. [Keean] has been arraigned on the charges, advised of his rights and counsel has been appointed. [Keean] has denied the allegations. The Juvenile Court placed [Keean] at [the Madison Detention Center] and the matter is pending adjudication.

The district court did note:
[Keean] has recently become involved with the Court system and the pattern appears to be [Keean] is escalating in violent criminal activity. The recent alleged criminal history of [Keean] is very alarming to the Court. However, this particular factor is structured on convictions and adjudications, which [Keean] has neither at this time.

Thus, the district court determined that this factor supported waiving jurisdiction to the juvenile court.

*(vi) Keean's Best Interests*

The district court noted that "[i]t is always the best case scenario for a juvenile offender to be rehabilitated through the treatment options of the juvenile court. . . . In this particular case, Keean has never been adjudicated in the juvenile court and offered services through the juvenile court. This Court finds that it is in [Keean's] best interest to receive these services in an attempt to rehabilitate him" and this factor supported waiving jurisdiction to the juvenile court.

*(vii) Consideration of Public Safety*

The district court noted that the fight between Keean and A.U. started over a social media post involving a juvenile female, after which the two teen boys agreed to a fight in which weapons were not to be used. The court stated:

[Keean] first thought that fighting was the best way to resolve this situation and then escalated his behavior with wanting to use brass knuckles and ultimately using a knife in this fight, causing significant injuries to the minor victim. This pattern of thinking is alarming, concerning and dangerous. Whatever [Keean's] motivation was for this incident, it falls outside of a safe action and creates concern for the Court of what else [Keean] is [capable] of doing and what extremes he will take in the future. This was violent, reckless and unnecessary. [Keean's] recent behavior shows a trend for this type of behavior and the Court has responsibility to protect all members of the public. Therefore, this factor supports the Court retaining jurisdiction over the matter and denying the motion to waive jurisdiction to the juvenile court.

*(viii) Ability to Appreciate Nature
and Seriousness of Conduct*

In considering [Keean's] ability to appreciate the nature and seriousness of his conduct, the district court acknowledged:

[Keean] is 14 years of age and has the ability to appreciate the nature and seriousness of his conduct. The evidence presented does not show in any way that [Keean] does not understand why he is before this Court. The Court heard testimony from . . . the Director of the Ombudsman Program through Grand Island Public Schools, that [Keean] is a very bright boy. Further[, Keean] was completing his necessary school work to proceed toward credits for graduating. [Keean] has continued [schoolwork] while at [the Madison Detention Center] . . . with passing grades in all classes. This shows the Court that [Keean] is a capable young man with the ability to appreciate his actions and the resulting consequences. The Court concludes that [Keean] is able to understand why he is before this Court and the process occurring in his cases. This factor neither supports the Court retaining jurisdiction nor waiving jurisdiction to the juvenile court.

*(ix) Need for Detention Beyond Minority*

In considering whether Keean had a need for detention beyond his minority, the district court stated:

[Keean's] alleged violent actions are very concerning to the Court. [Keean] has had recent issues, but services have not been exhausted for [Keean]. This Court has hope for [Keean]. Services need to be used in an attempt to help [Keean] and hopefully give him a chance at changing his recent ways and allowing him to become a productive member of society. With the proper supervision and services, [Keean] has the potential to be molded and guided into a productive and fulfilling life. It is argued that the violent nature requires public safety to be the main concern, however, this case presents many unanswered questions on the issue of public safety. The Court is not minimizing public safety and even agrees that that specific factor supports [Keean] being tried as an adult. However, this factor asks to weigh the best interests of [Keean] with public safety and there is still hope to help [Keean]. [Keean] is young and needs the help that the juvenile court can provide. It is not the time to give up on [Keean], it is time to help him and provide him the opportunities he has not had up until this point in his life. [Keean's] actions were not appropriate or warranted, but he was 14 years old on September 26, 2019, and still learning how to respond to situations when they arise. This factor, even with the violence and concern for public safety, slightly supports waiving jurisdiction to the juvenile court.

### (x) Restorative Justice

The district court noted that this factor was not applicable to this case.

### (xi) Juvenile Pretrial Diversion Program

The district court noted that this factor was not applicable to this case.

### (xii) Use or Possession of Firearm

The district court noted that [Keean] has not been convicted of any offense involving a firearm, nor has he acknowledged any unauthorized use or possession of a firearm. However, the district court also acknowledged exhibit 6 contained a picture that Keean posted on social media on July 10, 2019, showing Keean holding a handgun pointed at the camera. The court noted that there was no evidence of the current location of that firearm or how Keean obtained possession of that firearm, but that it was "very concerning that [Keean], then a thirteen year old child, had a handgun to use for this photograph." The court further stated that "[t]his is the only indication of [Keean] having a firearm and this particular alleged event did not involve a firearm." Thus, the court determined that this factor neither supported waiving jurisdiction to the juvenile court nor retaining jurisdiction.

### (xiii) Juvenile Court Order

The district court found:

A juvenile court has never issued an [order] for [Keean] pursuant to Neb. Rev. Stat § 43-2,106.03 [(Reissue 2016)]. The Court has received, as Exhibit 2, copies of the cases filed in Hall County, Nebraska[,] involving [Keean]. Further, no evidence referencing such order from a different jurisdiction was presented. Therefore, no evidence was presented showing that a court has found [Keean] unamenable to rehabilitative services and this factor supports waiving jurisdiction to the juvenile court of Hall County.

### (xiv) Gang Member

The court found that [Keean] is a criminal street gang member and this factor supported retaining jurisdiction in the district court.

### (xv) Other Matters

The district court considered Keean's "attitude and disregard for authority" as an additional concern in evaluating whether the matter should be transferred to the juvenile court. The district court specifically referred to Exhibit 9, an audio recording of a November 19, 2019, hearing before the county court in this matter. The district court stated:

> In the hearing, [Keean] is disrespectful to his mother, his attorney and the Court. [Keean's] language is inappropriate and he is reminded of this multiple times during the hearing. At the end of the hearing, [Keean] says "Fuck the system" and "keep head up" directed to [County Court] Judge Corey and County Attorney Martin Klein. . . . This attitude shows a lack of respect for many people and the judicial system in general. [The Madison Detention Center] reports this issue with authority has improved, however it was still blatantly displayed on November 19, 2019, and this Court must comment on and address this behavior. The Court hopes [Keean] has learned from this situation and will not be informed of any future situations similar to this particular court hearing on November 19, 2019.

Despite discussing [Keean's] attitude and disregard for authority, the district court did not state whether this factor weighed in favor of transferring the matter to the juvenile court, retaining jurisdiction in the district court, or was neutral.

### (b) District Court's Conclusion

The district court granted Keean's motion to transfer to the juvenile court, stating:
> The Court finds that a sound basis for retaining the case in [the] District Court and trying [Keean] as an adult is not present. The decision of the Court required great deliberation and consideration. There are many factors that support retaining jurisdiction, but when looking at all factors, the Court has hope that services can be provided to [Keean] and correct the path for [Keean]. The Court hopes that [Keean] will appreciate the seriousness of these proceedings and his alleged actions. The Court reiterates that this was a very violent situation and [Keean's] gang affiliation is alarming. Along with public safety, this matter has factors for [Keean] to be tried as an adult. However, after consideration of all of the factors, no sound basis exists to try [Keean] as an adult, requiring the matter be transferred to the juvenile court. [Keean] has an opportunity for rehabilitation and to learn from his past behaviors and issues. This Court hopes [Keean] will take full advantage of this opportunity.

The State has timely appealed to this court.

### III. ASSIGNMENTS OF ERROR

The State contends that the district court abused its discretion in transferring Keean's case to juvenile court "by giving inappropriate weight to the fact that Keean had never been adjudicated

or convicted under *Neb. Rev. Stat.* § 43-276(1)(a) and under *Neb. Rev. Stat.* § 43-276(1)(e)." Brief for appellant at 3. The State also contends that the district court erred in transferring the case to juvenile court because "[a] sound basis existed for retaining the matter in district court and denying the motion to transfer to juvenile court." *Id.*

## IV. STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt,* 299 Neb. 573, 909 N.W.2d 363 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## V. ANALYSIS

### 1. MOTION TO TRANSFER TO JUVENILE COURT

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, all of the allegations against [Keean] put him within this category of juvenile offenders, albeit by one day.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Cum. Supp. 2018).

In the instant case, when Keean moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in Neb. Rev. Stat. § 43-276(1) (Supp. 2019):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at a juvenile transfer hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." § 29-1816(3)(a).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "The burden of proving a sound basis for retention lies with the State." *Id.*

### 2. STATUTORY FACTOR § 43-276(1)(e)-- PREVIOUS HISTORY OF JUVENILE

The State first assigns that, in performing its balancing analysis, the court abused its discretion by giving inappropriate weight to the fact that Keean had never been adjudicated or convicted under § 43-276(1)(a) and (e).

As previously stated, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court performs "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens, supra.* In doing so, the court weighs the factors set forth in § 43-276(1). One such statutory factor is § 43-276(1)(e) which requires the court to consider "the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court." In weighing this factor, the district court, after summarizing prior allegations against Keean, stated:

> [Keean] has recently become involved with the Court system and the pattern appears to be [Keean] is escalating in violent criminal activity. The recent alleged criminal history of [Keean] is very alarming to the Court. However, this particular factor is structured on convictions and adjudications, which [Keean] has neither at this time.

The State argues that in performing this balancing analysis, the court misconstrued § 43-276(1)(e), thereby affording it improper weight and analysis. In furtherance of this assignment of error, the State argues:

> The Court incorrectly construes this section to be limited to only convictions and adjudications. The statute is plainly written to be construed as broad as possible . . . as it includes the "previous history of the juvenile" with absolutely no limitations on what will be contained in that history. The statute does specifically point to convictions and adjudications but is not limited to any way to just them, contrary to the [district] Court's assertion.

Brief for appellant at 15.

We agree with the State that § 43-276(1)(e) is not limited to consideration of only prior convictions and adjudications, but we disagree that the district court failed to consider Keean's prior nonadjudicated conduct in the court's balancing analysis. In that portion of the order quoted above, the court referred to Keean's recent pattern of nonadjudicated, alleged conduct as "very alarming to the court." In another section of the order discussing the "need for detention beyond [Keean's] minority," the court provides, in part:

> [Keean's] alleged violent actions are very concerning to the Court. [Keean] has had recent issues, but services have not been exhausted for Keean. This Court has hope for [Keean]. Services need to be used in an attempt to help [Keean] and hopefully give him a chance at changing his recent ways and allowing him to become a productive member of society.

Within this paragraph, the court was clearly referring to Keean's multiple "actions," his "recent issues," and "recent ways." Read as a whole, we believe the district court did consider the other allegations and provided them weight in the court's balancing analysis. In short, we do not read the court's order as demonstrating the court failed to consider Keean's history of nonadjudicated conduct in its balancing analysis.

As a second argument under this same category, the State alleges that the court ignored the evidence the State provided within exhibit 2, which contained copies of Keean's Hall County juvenile court files. The State argues that this file contains a journal entry documenting that 13-year-old Keean left the Boys Town shelter in Grand Island following a "shelter detention" after he was charged in July 2019 for incidents occurring prior to July 2018. The State argues that this conduct, along with Keean's failure to attend two first appearance hearings associated with these charges, demonstrate that Keean is not amenable to rehabilitation and those facts were simply ignored by the district court. The State argues the court's failure to refer to this conduct, which the State argues qualifies as "prior history" subject to consideration under § 43-276(1)(e), provides further evidence that the court misconstrued § 43-276(1)(e) to mean that the court could only consider a prior history of adjudications or convictions in performing its balancing analysis.

But as we stated before, we believe the State misreads the court's order. A full reading of the court's order demonstrates that it did consider other "history" in its balancing analysis. Nor do we find that the court's failure to include reference in its order to Keean leaving the shelter detention in July 2019 as demonstrating the court refused to consider this history in its analysis. As we discuss more thoroughly in performing the balancing analysis below, this limited entry in exhibit 2 provides sparse detail as to the circumstances attendant with Keean's shelter detention placement and we cannot say the district court's failure to discuss it suggests the court failed to consider Keean's history other than prior adjudications or convictions in its balancing analysis. This assignment of error fails.

### 3. SOUND BASIS FOR RETAINING MATTER

The State next argues that the district court abused its discretion in finding that a sound basis did not exist to retain this matter in the district court. In furtherance of this argument, the State acknowledges that it was the State's burden to show a sound basis existed for retention, but believes it satisfied that burden and that the court erred in transferring the matter to the juvenile court.

Both parties acknowledge that the decision to retain or transfer Keean's case is a product of balancing the statutory factors in § 43-276(1). Both parties equally acknowledge that in applying those factors the court is to balance public protection and societal security against the practical and nonproblematical rehabilitation of the juvenile. *State v. Hunt,* 299 Neb. 573, 909 N.W.2d 363 (2018). Simply stated, the State argues that when applying the factors, the scale tips in favor of retaining jurisdiction in this case and the district court abused its discretion in finding to the contrary.

In support of its position, the State points to the violent nature of Keean's conduct during the fight; his pattern of conduct in 2018 and 2019 which appeared to be escalating; his involvement in gang activity, and his motivation for committing the crime all provide substantial weight in favor of retaining the matter in the district court. The State argues this pattern of conduct reveals significant concerns for societal security and a significant need for societal protection.

On the other side of the scale, the State argues the prospect of practical and nonproblematic rehabilitation of Keean is remote. In support of this proposition, the State argues that Keean has already demonstrated he is not amenable to services provided in juvenile court and cites to this court's ruling in *State v. Leroux*, 26 Neb. App. 76, 916 N.W.2d 903 (2018). The State argues that in *Leroux*, this court found, in part, the record indicated the juvenile was not amenable to treatment options because he had previous opportunities in juvenile court which were not successful and that juvenile probation did not have services tailored to the violence the defendant was alleged to have committed. In that regard, the State argues:

> In the instant case, [Keean] has had the opportunity to have Juvenile Services put in place, but he never made himself available to benefit from Juvenile Services. No evidence has been presented to suggest that [Keean] would benefit from psychological services that are more commonly found in Juvenile Court than in Criminal Courts. Additionally, [Keean's] behavior during his arraignment shows his lack of respect for the court system. Throughout his arraignment, he was disruptive and rude to [the judge] and terminated his arraignment by yelling "fuck the system." His lack of respect for the court system and for [the judge] demonstrates that he is not likely to respect and take seriously anyone in the Juvenile Court system and the services they may provide him if the Court's decision to grant the Motion to Transfer to Juvenile Court is affirmed.

Brief for appellant at 18 (citations omitted).

Further, in support of its position that Keean failed to take advantage of previous juvenile court treatment options and opportunities, the State argues:

> The Court ignores the evidence the State provided within Exhibit 2 that shows [Keean's] absconding from the juvenile court system. This . . . highly pertinent "previous history" is never even mentioned by the Court and presumably was never properly weighed by the Court. It also rewards [Keean] for escaping the jurisdiction of the juvenile court for a significant period. In giving all weight to the lack of convictions and adjudications, the Court rewards [Keean] for dodging the juvenile court as well as law enforcement. It tells [Keean] as well as all other juvenile offenders that they can commit heinous crimes but as

- 12 -

long as they can dodge law enforcement and the court, no punishment will come from their crimes.

Brief for appellant at 16 (citations omitted) . We will discuss the State's contentions independently.

(a) Factors Favoring Retention

There is little disagreement among counsel or the district court governing the factors that weigh in favor of retaining jurisdiction. The State argues, and the district court found, that this significant act of violence, Keean's pattern of escalating behavior, Keean's gang membership, and Keean's attitude at a November 2019 court hearing all indicated concerns relating to future issues of public safety and provided sound reasons to retain the matter in the district court. The real issue in this case appears to turn on the other side of the ledger. That is, the prospects of 14-year-old Keean's practical and nonproblematic rehabilitation.

(b) Factors Governing Practical and
Nonproblematic Rehabilitation

As it relates to Keean's potential rehabilitation, the State first argues Keean failed to present evidence to suggest that he would benefit from future rehabilitative services. However, the State did not offer any direct evidence that Keean could not benefit from future juvenile services. It is the State's burden here to demonstrate a sound basis exists for the district court retaining jurisdiction of this matter. That burden includes demonstrating that societal protection outweighs the practical and nonproblematical rehabilitation of Keean. If the juvenile court does not offer any rehabilitative services which would benefit an individual like Keean, that evidence should have been part of the State's offer of proof.

Instead, the State attempts to rely on Keean's prior "history" here to indicate that he is not amenable to future rehabilitative services even if such services are available. The State's argument here is captured by its statement, "In the instant case, [Keean] has had the opportunity to have Juvenile Services put in place, but he never made himself available to benefit from Juvenile Services." Brief for appellant at 18. The State then cites to *State v. Leroux,* 26 Neb. App. 76, 916 N.W.2d 903 (2018), in support of this proposition, as illustrative of a juvenile not being amenable to rehabilitation treatment in the juvenile system. First, contrary to the State's assertion, we did not find in *Leroux* that Leroux was not amenable to treatment options presented by the juvenile court. Instead, we held that "[t]he evidence certainly supports that Leroux is amenable to treatment. That said, we cannot say the district court abused its discretion in determining that Leroux's best option for such treatment would be at the NCYF rather than the YRTC." *State v. Leroux*, 26 Neb. App. at 106, 916 N.W.2d at 922. Second, the record here is not necessarily indicative of Keean not being amenable to rehabilitation. The record indicates that then 12-year-old Keean was involved in criminal activity between April and July 2018, but was not charged for those allegations for nearly a year until July 12, 2019. On that day, the State apparently brought Keean into the Office of Probation Administration (OPA) for a juvenile intake which led the OPA to recommend that Keean be placed at a Boys Town shelter in Grand Island. The record then indicates that Keean "scored for Shelter Detention related to this case over the weekend, then left Boystown and his whereabouts are unknown." The State offered no additional evidence governing this incident.

There is no evidence of whether the Boys Town shelter was a secure facility, whether rehabilitative services were available or were going to be offered there, or any other details governing this placement or Keean's absence. Instead, the record is limited to this nondescript journal entry followed by an indication that the court then issued a "pickup order" for Keean who was not located until November 2019 in Lincoln. We cannot conclude from this record that because Keean apparently left this "shelter detention related to this case over the weekend," after having been charged nearly a year after his alleged conduct, that this now 14-year-old troubled boy is not amenable to rehabilitation.

That is not to say we are not troubled with Keean's conduct here. Keean was involved in a serious act of violence that nearly took the life of A.U. He has demonstrated a pattern of criminal conduct beginning when he was 12 years old and which culminated in this fight and criminal act on his 14th birthday. Had he performed the act the day before, he unquestionably would remain in the juvenile court. See § 43-246.01(1). But because he was involved in this conduct as a 14-year-old, we must weigh the risk Keean poses to society in relation to his prospects of practical and nonproblematic rehabilitation over the 5 years before the juvenile court would lose jurisdiction over him. Like the district court and the State, we are likewise troubled with Keean's comments during his November 2019 court appearance which occurred after he was located in Lincoln. His language of defiance certainly lends some credence to the State's argument that Keean is not amenable to future rehabilitative efforts. However, we likewise take note of Keean's conduct after November 2019 when he was placed at the Madison Detention Center. There the record indicates that Keean did begin to make progress within that structured environment and that environment appears to be the first indication in this record of the impact of rehabilitative services on Keean.

After weighing all of these factors, the district court, in a thorough order which documented the court's consideration of the factors found within § 43-276(1) and its balancing of all protection and security of the public against the practical and nonproblematic rehabilitation of Keean, stated:

> The Court finds that a sound basis for retaining the case in [the] District Court and trying [Keean] as an adult is not present. The decision of the Court required great deliberation and consideration. There are many factors that support retaining jurisdiction, but when looking at all factors, the Court has hope that services can be provided to [Keean] and correct the path for [Keean]. The Court hopes that [Keean] will appreciate the seriousness of these proceedings and his alleged actions. The Court reiterates that this was a very violent situation and [Keean's] gang affiliation is alarming. Along with public safety, this matter has factors for [Keean] to be tried as an adult. However, after consideration of all of the factors, no sound basis exists to try [Keean] as an adult, requiring the matter be transferred to the juvenile court. [Keean] has an opportunity for rehabilitation and to learn from his past behaviors and issues. This Court hopes [Keean] will take full advantage of this opportunity.

This portion of the court's order is consistent with a significant factual finding of the district court wherein it stated:

> [Keean's] alleged violent actions are very concerning to the Court. [Keean] has had recent issues, *but services have not been exhausted for* [*Keean*]. This Court has hope for [Keean]. Services need to be used in an attempt to help [Keean] and hopefully give him a

chance at changing his recent ways and allowing him to become a productive member of society. With the proper supervision and services, [Keean] has the potential to be molded and guided into a productive and fulfilling life.

(Emphasis supplied.)

In short, contrary to the State's contention, the district court believed the State did not satisfy its burden of showing that 14-year-old [Keean] was not amenable to productive and practical rehabilitation in the nearly 5-year period of time until his 19th birthday. Although reasonable minds might differ on this conclusion, we cannot say that the court abused its discretion in so finding. More specifically, although there was evidence that Keean apparently "left" a "shelter detention" at Boys Town shelter (following a recommendation of said placement nearly a year after incidents which gave rise to the placement), and then failed to appear at two scheduled hearings prior to November 2019, and was originally defiant when he first appeared in front of the court, we cannot say that this evidence of [Keean's] actions necessitates a finding that [Keean] is not amenable to treatment or therapy. Nor can we say that this record indicates that rehabilitative services are unavailable to [Keean]. Because of [Keean's] young age and subsequent improvement at the Madison Detention Center once he was placed there, we cannot say the district court abused its discretion in finding that services for [Keean] had not been exhausted or that he was amenable to treatment.

Based upon those findings, we likewise conclude that notwithstanding the factors that weigh in favor of retaining this matter in the district court, the district court did not abuse its discretion in reaching the ultimate conclusion here that on balance, the State failed to carry its burden. Although we agree that the district court did not abuse its discretion here, this opinion today in no way minimizes the significance of Keean's violent act, his pattern of behavior, or our concerns about the prospect of Keean making meaningful changes in his life. That said, we echo the view of the district court here in stating we are most hopeful that Keean appreciates the seriousness of these proceedings and his alleged actions and that Keean takes full advantage of this opportunity, a "system" designed to provide him with this second chance.

## VI. CONCLUSION

For the foregoing reasons, we affirm the district court's order granting Keean's motion to transfer to the Hall County Court, sitting in its capacity as a juvenile court.

AFFIRMED.